What are you doing here? I thought you were going to turn this over to somebody. I take all cases. All comers. Well, thank you very much for being here and you may proceed. May it please the court. My name is David Stickman. I'm the Federal Public Defender for Nebraska. And it's my pleasure to represent Mr. Roland Long this morning. Mr. Long should have been entitled and received a sentence reduction after he filed a request with Judge Smithcamp pursuant to the recent changes in the crack cocaine guidelines. Now, this case is squarely governed by the Supreme Court decision in Freeman v. United States. I think the parties actually agree that Freeman is controlling. And under the plurality decision and Justice Sotomayor's opinion, where we have an 11C1C agreement like we have in this case, where that specifies a particular sentence and where there's a plea agreement that specifies a specific sentencing range that has subsequently been reduced by the Sentencing Commission, the individual is entitled under 18 U.S.C. section 3582C2 to a sentence reduction. The plea agreement in this case is a C1C plea agreement. Judge Smithcamp didn't recognize that at first. Let me ask you this. Judge Smithcamp made two factual errors. One of them is you're talking about she misinterpreted the agreement, plea agreement, and she misstated or misinterpreted the quantity. Yes. What relief are you looking for here? Do you think that because you argue these are material matters that it should go back for resentencing? Or do you think that we can come to a final conclusion here? I'm asking that it get reversed and sent back to Judge Smithcamp. I think that you could also determine on the facts of this case where the sentence ought to lie, but it would probably be more appropriate to send it back to her. This case, and one of the reasons for that is the drug quantity. She made a finding of 45 grams, which is outside the agreement. The agreement in this case quite clearly in paragraph 6A says that the parties agree, again, pursuant to C1C, that the drug quantity is between 20 grams, at least 20 grams, but not more than 35 grams of crack cocaine. That sentencing range back at the time of the plea agreement was a level 28 under Section 2D, 1.1 of the guidelines. Now, that range is possibly encompassed by three different ranges, and so it's incumbent, I think, on her to decide which range would be the most appropriate, given that there was the finding outside the agreement of 45, the plea agreement of the parties, which is binding in this case of 20 to 35, and then there's no evidence really within the 20 to 35. So you're saying you don't think that we could, and I'm not asking to make the decision, but I'm saying that you don't think we could make the analysis on appeal. It should go back. Well, I think you could if you found under the rule of lenity that it ought to be, the quantity would be 20 grams, which would be the lowest quantity, which would put Mr. Long in a new amended guideline range of 22. You could add two levels for the gun, which makes it 24, give him three levels off, makes it a level 21, and find that that is the appropriate range. But then I believe that where within that range he follows would be appropriate for her to decide. Now, in this case, you can very easily determine where the party found the guideline range to be, because you have a level 28, you have two levels for the gun, that's a 30, minus three levels to the level 27. He's in criminal history category six. There is no question about that. He had more than 30 criminal history points. And a level 27 puts him in a range of 130 months to 162 months. He's right in the middle of that range at 144 months. That's pursuant to the agreement in this case. So if you were to decide the case at a level 20 plus 22, rather, based on his quantity of 20 grams, again, you'd get 22 plus two, 20 makes it 24, less three is 21. And you put him in that range in category six, and if you go halfway in the middle of that, then you can make that decision. But perhaps that would be one that would be better off to go down to category 10. I'm not sure I've ever seen a repeal court make that calculation. It seems like that's totally under the Supreme Court decision, totally within the province of the sentencing judge. Go ahead. I think I was done. I was just saying it seems that that's what the district courts do every day, and we don't do that unless you can give me some authority that we have to do something like that. I'm just saying I think that the end result is fairly clear within those parameters. So if you wanted, you could, but I'm suggesting that I think it's appropriate to send it back to Judge Smithcamp to make those calculations, and this time she would realize it's a C1C agreement, and with your guidance there, I'm sure that the proper decision would be reached. Well, all of these calculations would then ignore the, although she, the district judge, got it slightly wrong, but it was a C agreement instead of a B agreement. Yes. So we would ignore the C1C agreement and go to your new calculations following Freeman's rationale. Is that what you're saying? Well, the only thing that you ignore in the agreement, you actually give effect to the agreement in the sense that we have a specific reference to 20 to 35 grams in the agreement, and that at the time was a level 28. We're asking that it now be subject to the 3582 so that you, because that range now has subsequently been lowered by the Sentencing Commission. But I thought Freeman said that the guideline range, whatever it may be, has to be specifically mentioned in the C agreement before we apply Freeman. Well. And you're assuming that it has been specifically mentioned, and I'm not sure I'm there with you. Okay. Well, the agreement, it says. This is more like U.S. v. Johnson, our case, our 2012 case, which said, although the guidelines were mentioned, it wasn't specifically mentioned in the calculation under the C agreement, isn't it? Well, I disagree with that because we have a very specific provision here, and it is that specific provision that is referenced in the plea agreement and that has been lowered by the Sentencing Commission. It's the drug quantity guideline, 2D1.1. We specifically reference that in the plea agreement where you're talking about at least 20 grams but not more than 35 grams. That's the specific one that has been reduced. What I think you're referring to is there is no then statement that, and therefore the imprisonment range is 130 to 162 months, something along those lines. Well, that's kind of what the Johnson case says, that you've got to be more specific than your discussion of guideline calculations, in this case, to get your freeman relief. Well, what could we be more specific about than the level itself? And again, Category 6, there's no question about that. If you look at his pre-sentence report and his criminal history, it's obvious a level 6, criminal history 6. So you know where he's at. You have to say this calculation is the basis for this agreement, and that kind of language, that kind of specific language doesn't appear, and that says, I read Johnson, maybe I'm misreading it. Well, but there is never a situation where you have a guideline range, like the 130 to 162, that is reduced by the Sentencing Commission. That's not what the Sentencing Commission does. They don't reduce those ranges. They reduce base offense levels. They reduce specific guidelines. They reduce or sometimes make an enhancement to certain things. But the guideline range that must be referenced in this case is the specific offense level that we're talking about. Well, you can reach a C agreement sort of without even worrying about the guideline range, can't you? Yes, absolutely. So that's my point. Yes. That they've reached a C agreement on various terms and conditions, and as I read Freeman and as the court read Freeman, I think in the Johnson case, unless you go with that and you don't get the relief, unless, I think this was what, the single justice set the trend, you don't get to that point in a case like we have here. I don't think you need to have the ultimate range stated because Justice Sotomayor said that as long as the agreement expressly referred to the range or, in my opinion, the offense level that is subsequently lowered, then you would be entitled to relief. I see my time's up. So thank you. We'd ask that the case be reversed. Thank you. Good morning, Mr. Sigler. Good morning, Robin. Pleased to court. Mr. Stickman. I am Bob Sigler here on behalf of the United States today. And we've gone from English class in the preceding argument to math class, and I am, frankly, spinning. But let me try to address a couple of things that you people have brought up. First of all, Judge Riley's initial question about what relief, let me say in that regard, the errors made below, and I made one of them when we interlineated the plea agreement to go from a level 28, which it was at the time of the plea, and we interlineated it to a 26 because the sentencing commission had the proposed amendment in front of it. But on the day Mr. Long pled, it was a 28. And then the court's error about denominating this as C1B has already been alluded to. But as I said at the time of the plea agreement and at the time of the change of plea, and it's in the transcript, when we were interlineating the 28 to a 26 in the plea agreement, I made the statement then that it doesn't matter one bit what the level is since it is a C1C agreement. And that was said seven years ago. We didn't have the benefit of foresight in seeing what Freeman would do, but this is clearly a C1C agreement not based on the guidelines, not explicitly based on the guidelines, and not by inference based on the guidelines, which is what Justice Sotomayor did for Mr. Freeman himself. She has these two exceptions. She basically agrees with the dissenters that C1C agreements are not subject to modification because of guideline amendment. However, she says there's two exceptions. If the plea agreement expressly by its terms shows us that the C1C sentence is based on the guidelines, that's one exception. Or two, if we can infer very clearly that it's based on the guidelines, then the relief can be afforded to the defendant. Let me ask you this. Assuming everything you say is correct, do we need to remand for resentencing just because the district court got the quantity wrong and said this was a B rather than a C? Does that mean that her analysis is sufficiently wrong that we should send it back for her to do another analysis? No, because even a blind squirrel finds an acorn, and she's got the right result here. And that result is there's no modification available to Mr. Long because this doesn't fit Justice Sotomayor's two exceptions in her concurrence in Freeman. It just doesn't fit. When Mr. Stickman is doing this math for you, what he's leaving out is the fact that Mr. Long is a career offender. That's found in the pre-sentence report. That's found by Judge Smithcamp at sentencing. And it makes a huge difference to what sentence he gets. And that's not unchallenged at all. That's not an issue. So when you do the math on this and leave that out, you're leaving out a fundamental guideline fact that is not adverted to in the plea agreement in any way, shape, or form. A guideline sentence, as we all know, has two axes. It has a vertical axis in drug cases based upon quantity, but it has a horizontal axis based upon your role in the offense, your criminal history points, and in this case of Mr. Long, the fact that he's a career offender. There is nothing in the plea agreement by its terms which Justice Sotomayor says that's the only thing we can look at, the terms of the plea agreement itself. That's how we decide whether one of the two exceptions applies. And there's nothing in the plea agreement whatsoever about such factors as a firearm enhancement. There's nothing in there about criminal history category. There's nothing in there about career offender. You would not know by picking up this plea agreement and just staying with it, you would not know what the guideline range applicable to Mr. Long was ever going to be. You'd be totally in the dark. Well, your argument would be stronger, wouldn't it, if there had been no reference to the quantity range and the base offense level? My argument would be airtight, but as I said, in 2007, we don't know that Freeman and guideline amendments are down the line. I will tell you in response to your question that today, when I go back to my office and draft a C1C agreement, I do not use any language about quantity at all anymore. And that's because you find yourself in this situation. I would be just curious as to, with respect to negotiations here and drafting of this document, what's the reasoning for including the rest of paragraph 6A? Because at the time, that's what we were instructed in our office to do, is put the quantity in. That's the only answer I can give you. And some of your cases, and Judge Beam pointed this out when he brought up one of them, in a couple of your cases that you've decided in the last four or five years, it has a similar issue or the same issue, you've noted that there is sometimes general advertence, I think is the term you used, in plea agreements to some guideline factors. But that's because those plea agreements were drawn up at a time where the concern we have in this case didn't exist. So, as I said, I don't do it now anymore. I wish I hadn't done it then. But the answer to your question is that was the office policy at that time. And I wish it had been. And it's not my policy now. So, as I said, when you look at this plea agreement, you can't for the life of you determine what Mr. Long's guideline range is going to be, based upon the terms of the plea agreement. And Justice Sotomayor is very clear that that's the only thing that we're supposed to look at, is the plea agreement itself. That's the, Justice, Judge Beam talked about the Johnson case, the case where I think you specifically addressed the matter of a C1C agreement, in terms of a career offender, is the Brown case, decided in November of 2012, a year and a half ago. And I think that when you take the analysis of the Brown case, which is based upon Justice Sotomayor's analysis in the Freeman case, and apply it to this case, that you can't find either of her two exceptions, of Justice Sotomayor's two exceptions, that she sets out in Freeman, apply in this case. The plea agreement by itself does not expressly or explicitly base the 144 sentence that Mr. Long got on that guideline range, nor can it be inferred from the terms of the plea agreement itself. As I said, the plea agreement is absolutely silent on such things as firearms, criminal history, and some of the other things that have led the Eighth Circuit and Justice Sotomayor herself to be able to say clearly, in her second exception, that we can infer from the terms of the plea agreement that it is a guideline-based sentence. Well, Mr. Sigler, the Brown case is an easier case because the sea agreement specifically referenced that the guidelines didn't enter into the calculation. We don't have that in this case. They didn't have that in the Johnson case, so this case is more like Johnson than Brown. Okay, well, I concede that, yes, but I think the analysis is basically the same, is what I'm trying to say, and I just call up Justice Sotomayor's Freeman analysis, and that's what this case comes down to. Mr. Stickman's right. We agree that that's the stare decisis that works here, and I think that when you do it – and finally, let me return to where I started and where Judge Riley started in the beginning. You send this back, for the life of me, I don't know what we'd do because I would object – or I adopted the pre-sentence report when it said 45 grams, even though the plea agreement said something else. So do we start – if we send it back, do we start fighting about the drug quantity again? We can't fight about career offender. I think that's the law of the case, since he's never objected to being classified as a career offender, and if he is a career offender, and although – then you get into the statutory changes that have occurred in statutory penalties for quantities of crack cocaine, and so when you do that, and you look at 4B1, career offender, and the differences between life sentence, 25-year sentence, I don't know where we'd be. The fact of the matter is, in conclusion, that this was never based upon – this plea agreement is in no way based on the guidelines, no matter how you construe it. It is based on the fact that he was a career offender, although that's not mentioned in the plea agreement. So I don't think you need to send it back because of any mistakes made by Judge Smithkamp in her characterization of it as a C1B, because of any mistakes made by me and Mr. Bracker when we inter-relineated it from a 28 to a 26. Those things just don't matter in this case. Okay, thank you. Mr. Stickwood's time? Give you one minute if you want to say anything. Of course, I'll always take an opportunity to say something. I would say that this case is much like United States v. Hoskins, which was a career offender case and a C1C, where the opinion goes through the Freeman analysis and it doesn't land on whether Mr. Hoskins was a career offender. And while it is true that the pre-sentence report says that Mr. Long was a career offender, he's really not a career offender because he was sentenced in this case under the plea agreement, which did not provide any rationale for him being a career offender. Judge Smithkamp indicated in her tentative findings when she came on the bench at sentencing immediately that she was accepting the plea agreement, and therefore all of the defendant's objections were moot. As well as in the addendum to the pre-sentence report, you'll see that Mr. Bracker did object to the career offender designation but wasn't heard on that because of the fact that she had accepted the plea agreement. The provision of the plea agreement that's applicable here is the one that talks about the offense level of 28, which was restricted to be 26, but where it says 20 to 35 grams. That's the only provision that's been changed by the Sentencing Commission. That's the only thing that Judge Smithkamp has to find in terms of that that's been subsequently lowered, so that would be the new basis for the change under Freeman. So again, we'd ask that you reverse and remand to Judge Smithkamp. Thank you. Okay. Well, thank you both for your arguments and other interesting cases. Mr. Ziegler says here we're dealing with math instead of English grammar. Thank you for your arguments, and we will be back to you in due course. Thank you.